UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES OF AMERICA,

                                                11 Cr. 228

    -against-                              OPINION

TYQUAN WILLIAMS,

                  Defendant.

----------------------------------------X


A P P E A R A N C E S:


        Attorneys for the United States of America

        PREET BHARARA
        United States Attorney
        Southern District of New York
        One St. Andrew's Plaza
        New York, NY  10007
        By:  Abigail Kurland, Esq.


        Attorney for Respondent

        FEDERAL DEFENDERS OF NEW YORK, INC.
        52 Duane Street, 10th Floor
        New York, NY 10007
        By:  Robert Baum, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-21-11

**Sweet, D.J.**

On the night of January 6, 2011, Defendant Tyquan Williams (the "Defendant" or "Williams") was arrested after two police officers stopped a car in which the Defendant was a passenger and, following a search of his person, recovered a revolver. Williams has been charged with possession of a firearm following conviction on a felony offense, in violation of 18 U.S.C. § 922(g)(1).

The Defendant has moved to suppress the firearm, all post-arrest statements, and any other evidence obtained by police upon his arrest, arguing that both the vehicle stop and the subsequent search of his person violated the Fourth Amendment.

Following briefing by the parties, on October 20, 2011 the Court conducted a suppression hearing. At the hearing, three New York Police Department ("NYPD") officers testified: Officer Steven Lopez and Officer Christopher Lopez, who were involved in Williams' arrest, as well Officer Nicholas Levesque, who transported the Defendant to the police station following his arrest.

For the reasons stated below, the Defendant's motion to suppress is granted.

## I. FACTS

On January 6, 2011, NYPD Officers Steven Lopez and Christopher Lopez (collectively "the Officers") were on patrol in an unmarked car in the Bronx, New York. (Suppression Hearing Transcript ("Tr.") 7.)[1]   The Officers were assigned to the anticrime unit in the 46th precinct, and they were working a 7:30 PM to 4:05 AM shift. (Tr. 3, 7, 53.)  Officer Steven Lopez was driving, and Officer Christopher Lopez was in the front passenger seat. (Tr. 7, 53.)

At approximately 10 PM, the Officers were driving westbound on West Tremont Avenue. (Tr. 7.)   The vehicle in which Williams was riding was a blue 2011 Hyundai that was heading in the opposite direction, eastbound, on West Tremont. (Tr. 7-8, 53, 91.)  Both Williams and the driver of the Hyundai are black.  (Tr. 93.)  The Hyundai was a rental car.   (Tr. 57, 84, Ex. 3502 - M.)   It was Officer Steven Lopez who first noticed the car, as the two vehicles passed each other at or near the intersection of University Avenue in what was described

---

[1]     The Officers are not related to one another. (Tr. 7.)

2

by the Officers as a high crime area.   (Tr. 6-7.)   After noticing the Hyundai, Steven Lopez made a U-turn to follow the Hyundai and indicated to Christopher Lopez that he wanted to pull over the vehicle.   (Tr. 7-8.)   Both Officers testified that after the U-turn they observed that the vehicle had a thin black plastic frame around the edges of its rear license plate (Tr. 8, 53-56), and photographs of the vehicle and its license plate support this.   (Tr.   92, Def. Ex. A-1 to A-9.)   The Officers stopped the car at the intersection of Grand Avenue and West Tremont.   (Tr. 9.)

After the Hyundai was stopped, Officer Christopher Lopez approached the driver's side, while Officer Steven Lopez approached the passenger's side. (Tr. 9, 56.)   Williams was seated in the front passenger-side seat. (Tr. 9-10.)   Officer Christopher Lopez testified that when he was at the Defendant's side of the car, with its window rolled down, he noticed an odor of marijuana coming from inside the vehicle.   (Tr. 10.)   Officer Steven Lopez testified that he did not smell anything at the time.   (Tr. 57.)   Officer Christopher Lopez asked the Defendant to step out of the vehicle (Tr. 15), frisked him (Tr. 15-18), and recovered a Smith and Wesson .357 magnum revolver from the waistband of Defendant's pants. (Tr. 18.)

3

Williams was arrested, transported back to the 46th Precinct, and subsequently charged with possession of a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g)(1).

The driver of the Hyundai was also arrested. (Tr. 87-88.)   Officer Seven Lopez later issued him a subpoena for a violation New York Vehicle & Traffic Law § 402-4.   (Tr. 59-60, Gov't Ex. 5.)   That charge was dismissed by the Traffic Court on the grounds that § 402-4 was inapplicable to the allegation of obscured plates testified to by Officer Steven Lopez at the Traffic Court hearing.  (Tr. 85-86; Ex. 3502 - M.)   The Traffic Court did not reach the issue of the lawfulness of the Hyundai's plate frame.  (Id.)

Both Officers recognized that their memo book entries must be accurate and reflect the details of their arrests.  (Tr. 27-28, 86-87.) However, in their paperwork surrounding the incident, neither Officer noted any traffic violation. (Tr. 28, 87; Def. Ex. C; Ex. 3502-D.)

**II. DISCUSSION**

**A. Legal Standard**

4

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." Whren v. United States, 517 U.S. 806, 809 (1996) (citations omitted). A vehicle stop is a seizure of both the driver and all passengers. Brendlin v. California, 551 U.S. 249, 255-257 (2007). Accordingly, a vehicle stop is constitutionally permissible only if it is reasonable. Whren, 517 U.S. at 810.

For a vehicle stop to be constitutional the police must have, at minimum, a reasonable suspicion that the person stopped is engaged in or has engaged in criminal activity. Arizona v. Johnson, 555 U.S. 323, 326-27 (2009). In the Second Circuit and the majority of others, reasonable suspicion of a traffic violation is sufficient in this regard. See United States v. Stewart, 551 F.3d 187, 193 (2d Cir. 2009).

In some instances, after a vehicle is stopped, concerns regarding officer safety can justify frisking the vehicle's occupants for weapons. See Johnson, 555 U.S. at 331.

5

In order "to proceed from a stop to a frisk," however, a separate reasonableness inquiry is required. Id. at 326. For a pat-down following a lawful stop to be constitutional, "the police officer must reasonably suspect that the person stopped is armed and dangerous." Id. at 327.

Determining whether reasonable suspicion exists is an objective inquiry. United States v. Glover, 957 F.2d 1004, 1010 (2d Cir. 1992); Holeman v. City of New London, 425 F.3d 184, 189-90 (2d Cir. 2005). The reasonable suspicion analysis is "rather lenient." United States v. Santana, 485 F.2d 365, 368 (2d Cir. 1973). However, reasonable suspicion requires "'some minimal level of objective justification' for making the stop." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting INS v. Delgado, 466 U.S. 210, 217 (1984)). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 (2002) (citations omitted); see also Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000) ("[T]he Fourth Amendment requires at least a minimal level of objective justification for making [a Terry] stop. The officer must be able to articulate more than an inchoate and

6

unparticularized suspicion or hunch of criminal activity." (citations and internal quotation marks omitted)).   Thus, at both the vehicle stop and the frisk stages, an officer's suspicion must be "based on specific and articulable facts, of unlawful conduct" in order to be consistent with Fourth Amendment standards.   United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994) (citations and internal quotation marks omitted).


Whether reasonable suspicion exists is measured from the objective perspective of a trained and experienced law enforcement officer.   See United States v. Cortez, 449 U.S. 411, 418 (1981); United States v. Villegas, 928 F.2d 512, 516 (2d Cir. 1991); United States v. Forero-Rincon, 626 F.2d 218, 221-22 (2d Cir. 1980).   However, "the 'actual motivations of the individual officers involved' in the stop 'play no role' in the analysis."   Holeman, 425 F.3d at 190 (quoting Wren, 517 U.S. at 813).   In assessing whether an officer's suspicion was objectively reasonable, a court must consider the "totality of the circumstances," reviewing them as a whole, rather than as discrete facts.   Arvizu, 534 U.S. at 273 (citations omitted); see also Cortez, 449 U.S. at 417-18; United States v. Barlin, 686 F.2d 81, 86 (2d Cir. 1982).

7

"'The Government bears the burden of proving, by a preponderance of the evidence, that reasonable suspicion existed for a stop.'" United States v. Stewart, 604 F. Supp. 2d 676, 680 (S.D.N.Y. 2009) (quoting United States v. Medina, 301 F. Supp. 2d 322, 328 (S.D.N.Y. 2004)); see also United States v. Echevarria, 692 F. Supp. 2d 322, 332 (S.D.N.Y. 2010) (collecting cases).   If the Government does not meet this burden, any evidence obtained from the improper seizure or as a result of it must be excluded from trial.  See Wong Sun v. United States, 371 U.S. 471, 484-88 (1963); United States v. Harrell, 268 F.3d 141, 148 (2d Cir. 2001).

## B. The Vehicle Stop Was Unconstitutional

In his Motion to Suppress, Williams argues that both the vehicle stop and the Officers' subsequent search of his person violated the Fourth Amendment.  The Court first considers whether the stop of the Hyundai in which Williams was a passenger was supported by reasonable suspicion.

The Government asserts that reasonable suspicion of a traffic violation justified the vehicle stop.  (Gov't Mem. 5-7 (Dkt. No. 14.)   At the suppression hearing, both Officers

testified that a traffic infraction involving the vehicle's license plate frame was the basis for the stop.  (Tr. 27, 63.)

Both Officers Christopher and Steven Lopez testified that it was Steven Lopez who first noticed the Hyundai and that it was initially Officer Steven Lopez's decision to pull over the vehicle. (Tr. 7-8, 53, 80.)  Steven Lopez testified that he observed the Hyundi driving in the opposite direction from the police vehicle that he was driving, and as the Hyundi passed the police car, he "looked out [his] mirror and observed . . . the license plate and proceeded to make a U-turn."  (Tr. 53-54, 63-65.)  Both officers testified that the plate frame they observed was on the rear license plate of the Hyundi.  (Tr. 20, 54.)  In response to Steven Lopez making a U-turn, Christopher Lopez, according to his testimony, asked "'What do you got?' you know, 'cause [Steven] indicated to me that he wanted to pull over the car." (Tr. 8.)

Officer Christopher Lopez testified that the type of license plate frame on the Hyundai would not obstruct anything that was written on the vehicle's plate. (Tr. 25.)  He testified that the middle number/letter portion of the plate was not obstructed by the frame, but he could not remember if the frame obstructed the words "New York" or "Empire State" at the top or

9

bottom.  (Tr. 23-24, 39-40.)  Officer Steven Lopez testified that the plate frame was "slightly impairing the visibility of 'Empire State' on the bottom of the plate" (Tr. 54), but not in such a way that he did not know that the plate read "Empire State."  (Tr. 84.)  Accordingly, the only testimony supporting that the frame obscured the plate was provided by Officer Steven Lopez, and he did not testify that any part of the plate's contents was not readable.

The Government has failed to prove by a preponderance of the credible evidence that the Officers observed sufficient facts to support objectively reasonable suspicion of a traffic violation.  Officer Christopher Lopez testified that a frame of the type on the Hyundai would not obscure the writing on the plate.  (Tr. 25.)  The photographs of the plate and frame demonstrate that it was narrow and did not obscure the readability of the plate.  (Def. Ex. A-5, A-8.)  The questionable nature of Steven Lopez's recollection, namely, that he saw, while driving at night toward the Hyundi, over his left shoulder a thin black plate frame around the license plate of the passing car and therefore made an immediate U-turn to pursue and pull over that vehicle, casts doubt on his recollection that the frame "slightly impair[ed]" (Tr. 54) part of the plate's contents.

10

More fundamentally, Officer Steven Lopez's testimony cannot be credited. Steven Lopez was not forthcoming with the Government about three past incidents involving his efforts to fix traffic tickets. When first asked about his involvement in ticket fixing by the Assistant U.S. Attorney in this case, Steven Lopez told her that he was not involved in it. (Tr. 51.) He testified that at that time he could not recall any of the incidents. (Id.) Later, when questioned again by the same Assistant U.S. Attorney, and only after signing a proffer agreement, Steven Lopez admitted to attempting to fix only one ticket. (Tr. 71.) After being confronted with tape recordings of two other ticket fixing incidents, Steven Lopez admitted to three events. (Tr. 52, 71.) Steven Lopez testified that he failed to mention any of these incidents when first questioned by the Assistant U.S. Attorney and only mentioned one of them upon his second meeting with federal officials because he forgot about the others. (Tr. 51-52.)

In addition, Officer Steven Lopez's ticket fixing efforts occurred only months before he was questioned by the government, his first admission came only after he acquired a proffer, and as he later agreed, he finally admitted to the other incidents only because it became impossible to maintain

11

his prior statements.[2]  Accordingly, under all the circumstances, Officer Steven Lopez's testimony that he observed a plate frame obscuring the Hyundai's license plate is not credible.[3]

Officer Christopher Lopez's testimony regarding the stop and plate frame is likewise not reliable. Officer Christopher Lopez testified that he believed that Steven Lopez made a U-turn of the police vehicle to pursue the Hyundai because, while driving in the opposite direction at around ten o'clock at night, he had seen over his shoulder that a vehicle heading toward him had a thin black license plate frame. (Tr. 8, 19-20.) This testimony was not credible, nor was Officer Christopher Lopez's assertion that he stops all vehicles with plate frames that he encounters unless it is unsafe to do so or he is engaged in other police business. (Tr. 21-23.) Neither Officer's account was plausible that, with their extensive police training, they believed that a narrow and unobtrusive plate frame is, in itself, a traffic violation or that, in the

---

[2]     The relevant colloquy is the following:
      Q. Once the tapes were played, you realized that it would be
         impossible to maintain the prior statement as truthful;
         correct?
      A. Correct.
      Q. And after the tapes were played, you realized you were
         caught red handed so you had to admit the truth; correct?
      A. Yes.
(Tr. 72.)
[3]     Judge Koeltl recently suppressed evidence based on a finding that Officer Steven Lopez's testimony regarding a search and seizure was not credible. United States v. Russel, No. 11 Cr. 312, Decision Transcript at 9-10 (November 9, 2011).

context of their anticrime patrol in which they focus on "more serious crimes, guns, robberies, burglaries, and address[ing] gang issues" (C. Lopez, Tr. 4), they immediately pursued a car on the basis of such a frame.

Neither Officer entered any mention of a traffic violation regarding an obscured license plate or any other infraction in either of their memo books. (Tr. 27-28, 86-87; Def. Ex. C; Ex. 3502-D.)   A summons based on a traffic infraction was not issued at the time of the stop.   The driver was later issued a summons based on an alleged violation of an inapplicable section of the New York traffic code.   The evidence presented established the possibility that the Officers pulled over the vehicle without either objective or subjective reasonable suspicion of an infraction and attempted to create a justification for their actions after the fact.

Not withstanding, even were one or both officers to be under the mistaken belief that an unobtrusive plate frame is unlawful (Tr. 20-21, 54), that does not establish reasonable suspicion.   An officer's good faith alone does not make his suspicion reasonable. Stewart, 604 Fed. Supp. 2d at 683.   While an officer's mistake of fact would not undermine the legality of an otherwise valid stop, see Stewart, 551 F.3d at 193 ("[A]

13

mistake of fact does not undermine the existence of reasonable suspicion."); United States v. Jenkins, 452 F.3d 207, 212 (2d Cir. 2006) (same), reasonable suspicion must be based on articulable facts of unlawful, not lawful, conduct. See Scopo, 19 F.3d at 781. A mistake of law cannot provide objectively reasonable grounds for suspicion. United States v. Jenkins, 324 F. Supp. 2d 504, 509 (S.D.N.Y. 2004) ("Mistakes of law . . . will render a stop invalid.") (citing United States v. Miguel, 368 F.3d 1150, 1153 (9th Cir. 2004) ("[I]f an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment."); United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003)); United States v. Williams, No. 2004 WL 1348981, at *1 n.4 (S.D.N.Y. June 15, 2004)(same); see also United States v. Brown, 961 F.2d 1039, 1041 (2d Cir. 1992) (mistakes of law are insufficient to support a search based on apparent authority under Illinois v. Rodriguez, 497 U.S. 177 (1990)).

Section 402-1(b), to which the Government points, provides in relevant part:

> Number plates shall be kept clean and in a condition so as to be easily readable . . . and the view of such number plates shall not be obstructed by any part of the vehicle or by anything carried thereon . . . .

14

N.Y. Veh. & Traf. § 402-1(b).  The purpose of this law is to ensure the readability of information printed on license plates and thereby facilitate the easy identification of vehicles.  See People v. Baez, 501 N.Y.S.2d 550, 552 (N.Y. Crim. Ct. 1986) ("the intent of [New York Vehicle & Traffic Law] § 402 is to . . . facilitate immediate identification." (citation omitted)); Matter of Froslid v. Hults, 20 A.D. 498, 503 (N.Y.A.D. 1964) ("the purpose of the license plate of an automobile is for ready identification of the owner by the police and by the public").

The Government has provided no authority indicating that a plate frame that does not obscure the view of the information printed thereon is a traffic violation in New York, and the Court has identified none.[4]  This is because operating a vehicle with such an unobtrusive plate frame is not a violation

---

[4]   Cf. Jenkins, 324 F. Supp. 2d at 511-12 (reasonable basis to believe a vehicle violated traffic laws because it had "no front license plate, and no apparent rear license plate. Although there actually was a rear license plate, it was a temporary, out-of-state plate that was not clear and not easily readable") aff'd 452 F.3d 207 (2d Cir. 2006); Lee v. Latourelle, No. 88 Civ. 9243, 1989 WL 82418 (S.D.N.Y. July 18, 1989) (stop permissible because license plate was obscured by dirt); People v. Arguinzoni, 852 N.Y.S.2d 546, 48 A.D.3d 1239, 1241 (N.Y. App. Div. 2008) (valid stop when "[t]he vehicle that defendant was driving matched the description of the vehicle observed leaving the scene of the robbery, defendant was driving in the vicinity of the robbery, and the vehicle's license plate was obstructed by packed snow" (citations omitted)); People v. Brooks, 804 N.Y.S.2d 140, 23 A.D.3d 847, 847 (N.Y. App. Div. 2005) (stop permissible when "rear license plate [was] obscured by dirt and snow"); People v. Smith, 767 N.Y.S.2d 327, 1 A.D.3d 965, 965-66 (N.Y. App. Div. 2003) ("The lack of a license plate on a vehicle generally will justify a stop of the vehicle for violation of Vehicle and Traffic Law § 402" (citations omitted)); People v. Griffen, 929 N.Y.S.2d 201 (Table), 2011 WL 1438973 (N.Y. Sup. App. Term 2011) (valid stop when rear license plate obstructed by a storage container mounted above rear bumper).

of New York's traffic laws.  According to the New York State
Department of Motor Vehicles, a driver in New York "cannot put a
frame around a vehicle plate if the frame prevents the view of
the information displayed on the vehicle plate."  See, New York
Dep't Motor Vehicles, "Cover or Coat Vehicle Plates," available
at http://nysdmv.custhelp.com/app/answers/detail/a_id/184.   That
unobtrusive plate frames are legal in New York is further
confirmed by the fact that the New York Legislature is currently
considering a bill that would outlaw certain, but not all,
license plate frames, namely digital frames that display
scrolling or flashing messages.  See N.Y. Senate Bill No. S3300-
2011; N.Y. Assembly Bill No. A2068-2011.

          In contrast to here, the cases in which the Second
Circuit has addressed reasonable suspicion of a traffic
violation involved officers' observations of facts that, if
true, constituted direct traffic infractions.    See, e.g.,
Stewart, 551 F.3d at 188-89 (officers testified that they saw
vehicle illegally encroaching on the crosswalk while stopped at
a red light), remanded to 604 F. Supp. 2d at 684 (suspicion on
this basis objectively unreasonable); Jenkins, 452 F.3d at 212
(finding reasonable suspicion of a traffic violation where
officers believed they saw missing rear license plate); see also
United States v. Bristol, -- F. Supp. 2d --, No. 10 Cr. 36, 2011

WL 3882820, at *4 at n.12 (E.D.N.Y. Sept. 2, 2011) (discussing this principle).  Here, the credible facts do not support that the Officers observed a traffic infraction.

In sum, whether the Officers here operated under a mistake of law, or worse, the credible facts surrounding the vehicle stop, when considered in their totality, are insufficient to support objectively reasonable suspicion of a traffic code violation.  The Government has failed to meet its burden, and the Court accordingly finds that the stop of the Hyundai was unconstitutional.

## C. Search of the Defendant's Person

The Government has not argued that the connection between the unlawful stop and the discovery of the weapon on Williams' person is "so attenuated as to dissipate the taint," Wong Sun, 371 U.S. at 491 (citation and quotation marks omitted), nor could they on this record.  The Officers' search and retrieval of the firearm occurred immediately following the unlawful stop and no other circumstances intervened.  See United States v. Trzaska, 111 F.3d 1019, 1027 (2d Cir. 1997); United States v. Olavarria, No. 09 Cr. 870, 2011 WL 1529190, *8-9 (S.D.N.Y. April 20, 2011).

17

Accordingly, because the vehicle stop in this case was impermissible, the Officers' search of Williams' person and the subsequent seizure of the firearm are fruits of the poisonous tree.   See, e.g., Harrell, 268 F.3d at 148; Bristol, 2011 WL 3882820, at *6 (citing United States v. Santiago, 950 F. Supp. 590, 594 (S.D.N.Y. 1996)).   The Court therefore does not reach whether this search would have been reasonable, had the vehicle stop not been unconstitutional.

**Conclusion**

Based upon the conclusions set forth above, the Government has failed to meet its burden of demonstrating that there was reasonable suspicion to justify the vehicle stop. Defendants' motion to suppress is granted, and the firearm and all fruits thereof shall be excluded at trial.

The irony presented by these facts is that the experienced Officers, observing a new model car driven by minority men in a high crime area, intuited a violation of law when one in fact existed.  For a government of laws, not men, however, more than intuition is required.


It is so ordered.

New York, NY
November 21, 2011

ROBERT W. SWEET
U.S.D.J.

19